**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**CHRISTINA LYNN KIKOLSKI,**

        **Plaintiff,**               **CIVIL ACTION NO. 14-cv-14700**

        **v.**                    **DISTRICT JUDGE DAVID M. LAWSON**

**COMMISSIONER OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Christina Lynn Kikolski seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 18). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.    RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be DENIED and Defendant's Motion for Summary Judgment (docket no. 18) be GRANTED.

2acaa5e7d9d8c932

## II.      PROCEDURAL HISTORY

Plaintiff filed applications for child's insurance benefits and supplemental security income in January 2010; Administrative Law Judge (ALJ) JoErin O'Leary issued an unfavorable decision with regard to those applications on August 12, 2011.  (TR 66-82.)  Plaintiff then filed the instant applications for child's insurance benefits and supplemental security income with protective filing dates of January 23, 2012 and February 29, 2012, respectively, alleging that she has been disabled since August 13, 2011, due to posttraumatic stress disorder (PTSD), valvular heart disease, fibromyalgia, headaches, anxiety, panic attacks, depression, and high blood pressure.  (TR 116-17, 208-15, 225, 229.)  The Social Security Administration denied Plaintiff's claims on June 26, 2012, and Plaintiff requested a *de novo* hearing.  (TR 83-117, 139.)  On August 1, 2013, Plaintiff appeared with a representative and testified at the hearing before ALJ Kim L. Bright.  (TR 30-65.)  In a September 4, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (TR 12-24.)  The Appeals Council declined to review the ALJ's decision (TR 1-5), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.     HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 12 at 2-14), Defendant (docket no. 18 at 5-13), and the ALJ (TR 18-24) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony.  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.  Therefore, the undersigned will incorporate these factual

recitations by reference.  Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 13, 2011, and that Plaintiff suffered from the following severe impairments: major depressive disorder, generalized anxiety disorder, attention deficit hyperactivity disorder (ADHD), postural orthostatic tachycardia syndrome (POTS), fibromyalgia, and migraine headaches.  (TR 15.)  Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 16-17.)  The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she may never climb ladders, ropes, or scaffolds; no exposure to occupational hazards such as dangerous machinery or unprotected heights; and must avoid extremes of either cold or heat.  She retains the ability to perform simple work; no restrictions on social contact; cannot perform work that is completed at a production rate, but rather, she can perform goal-oriented work that is not on a production line; perform work best in a low stress work setting, which is defined as no more than occasional decision making, nor more than occasional changes in work setting and no more than occasional use of independent judgment.

(TR 17-23.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 23-24.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from August 13, 2011, through the date of the decision.  (TR 13, 24.)

## V.      LAW AND ANALYSIS

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where

4

the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).   This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.      Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because the ALJ failed to properly weigh the medical evidence and failed to properly evaluate Plaintiff's credibility.  (Docket no. 12 at 15-26.)

#### 1.      The ALJ's Assessment of the Medical Evidence

First, Plaintiff contends that the ALJ improperly weighed the medical evidence, which led to an improper application of the res judicata doctrine.  (Docket no. 12 at 15-24.)  In *Drummond v. Comm'r of Soc. Sec.*, the Sixth Circuit held that social-security claimants and the Commissioner are barred by principles of res judicata from relitigating issues that have previously been determined.  126 F.3d 837 (6th Cir. 1997).  The Commissioner is bound by the principles of res judicata unless there is new and material evidence of changed circumstances.  *Id*. at 842; SSAR 98-4(6), 63 FR 29771-01 (June 1, 1998).  Where a claimant who has previously

6

been adjudicated "not disabled" seeks to avoid application of res judicata, he must provide proof that his condition has worsened since the date of the prior decision to such a degree that he is no longer capable of engaging in substantial gainful activity. *Vesey v. Comm'r of Soc. Sec.*, No. 11-10967, 2012 WL 4475657, at *10 (E.D. Mich. Aug. 6, 2012) (citations omitted).

On August 12, 2011, Plaintiff was found "not disabled" by ALJ JoErin O'Leary, despite her determination that Plaintiff suffered from severe impairments of major depressive disorder, generalized anxiety disorder, ADHD, POTS, fibromyalgia, and migraine headaches. (TR 66-82.) ALJ O'Leary also found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds. The claimant is limited to work that has no exposure to occupational hazards, such as dangerous machinery or unprotected heights. She should also avoid extremes of either cold or heat. The claimant retains the ability to perform simple work. She does not have any restrictions on social contact. The claimant cannot perform work that is completed at a production rate, but rather, she can perform goal-oriented work that is not on a production line. She would perform work best in a low-stress work setting, which is defined as no more than occasional decision making, nor more than occasional changes in work setting, and no more than occasional use of independent judgment.

(TR 74-77.) Thus, ALJ Bright was bound by this determination unless she found new and material evidence of changed circumstances. Noting her responsibility under *Drummond* and the Acquiescence Rulings, ALJ Bright found that the severe impairments assessed by ALJ O'Leary remain severe in this matter. (TR 15.) The ALJ further found that the record does not support a worsening in Plaintiff's condition since the previous determination. (TR 21.) The ALJ supported this assertion by pointing out that Plaintiff's mood swings had been stable on medication and that she had been taking the same medications for a longitudinal period of time.

(TR 21-23.)  The ALJ also noted that Plaintiff's activity level had increased since the previous determination.  (TR 21-23.)

ALJ Bright then evaluated the medical evidence, giving little weight to the opinions of Plaintiff's treating sources and great weight to the opinions of the state-agency consultants who made the initial unfavorable disability determination in this matter.  (TR 18-23.)  Plaintiff argues that the ALJ erred in this regard because there is new and material evidence from Plaintiff's treating sources that was not available to ALJ O'Leary in the previous matter or to the state-agency consultants in this matter.  (Docket no. 12 at 16-19.)  According to Plaintiff, this new and material evidence consists of the disabling opinions provided by Plaintiff's treating sources, Dr. Nancy J. Stadler, M.D. and nurse practitioner Beverly Karabin.  (*Id.* at 17.)  Plaintiff also claims that the opinion rendered by the consultative examiner, Gayle Oliver-Brannon, Ph.D., LP is new and material evidence that precludes the ALJ's reliance on the previous ALJ disability determination.  (*Id.* at 23-24.)  Plaintiff does not specify the existence of or cite to any other new and material evidence.  Plaintiff further asserts that the ALJ failed to evaluate Dr. Stadler and Ms. Karabin's opinions, as well as the opinions from her other treating sources, in accordance with the treating physician rule and/or the corresponding regulations, 20 C.F.R. §§ 404.1527 and 416.927.  (*Id.* at 20-23.)

It is well settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors:  (1) length of the treatment

8

relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors.   20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."  *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).  The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight.  *See*

9

*Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

          a.       <u>Dr. Nancy J. Stadler, M.D.</u>

In her decision, the ALJ noted Dr. Stadler's status as Plaintiff's primary care physician and discussed and considered Dr. Stadler's treatment notes ranging from November 2011 to April 2013. (TR 20.) The ALJ also summarized the opinion evidence submitted by Dr. Stadler:

> Dr. Nancy Stadler indicated in a letter dated October 7, 2011, that the claimant was unable to work in the last year due to her multiple medical conditions including anxiety, PTSD, ADD, and depression (Exhibit B4F). In another letter dated January 30, 2012, Dr. Stadler indicated that the claimant's conditions will be lifelong and she is unable to complete full time, competitive work for at least 12 months (Exhibit B7F). A multiple impairment questionnaire completed by Dr. Stadler on January 30, 2012, limits the claimant to sitting two hours in an eight-hour workday and standing/walking less than one hour in an eight-hour day. She further indicated that the claimant could lift and carry up to 50 pounds occasionally and up to 5 pounds frequently. Dr. Stadler stated the claimant was unable to lift overhead and unable to bend frequently. She also indicated that the claimant's symptoms would frequently interfere with her attention and concentration and would likely miss work more than three times a month due to her impairments (Exhibit B8F). Dr. Stadler completed another questionnaire on May 21, 2012, in which she indicated that the claimant's POTS syndrome prevented her from lifting more than 10 pounds occasionally or 5 pound[s] frequently and she would have constant interference with her attention and concentration due to her cardiac condition (Exhibit B11F). Dr. Stadler stated on August 4, 2012, that the claimant was not using drugs or alcohol and remained disabled (Exhibit B15F).

(TR 22.)

The ALJ then assigned little weight to Dr. Stadler's opinions. (TR 22.) In doing so, the ALJ reasoned that Dr. Stadler's opinions were both internally inconsistent and inconsistent with

other portions of Plaintiff's medical record.  As examples of these inconsistencies, the ALJ pointed out Dr. Stadler's January 30, 2012 opinion that Plaintiff could lift and/or carry up to 50 pounds occasionally and her conflicting May 21, 2012 opinion that Plaintiff could only carry up to 10 pounds occasionally.  The ALJ also noted that, in contrast to Dr. Stadler's May 21, 2012 opinion regarding Plaintiff's limitations resulting from her POTS, in a May 3, 2012 treatment note submitted by Ms. Karabin, who actually treated Plaintiff for her POTS, Plaintiff reported that she had been doing well for a number of months and that her migraines were stable with medication.  The ALJ also discounted Dr. Stadler's opinions on the basis that she was not the treatment provider for Plaintiff's mental conditions.

Plaintiff counters that Dr. Stadler's findings are consistent with the treatment notes. (Docket no. 12 at 19 (citing TR 321, 390, 394, 585, 587, and 680).)  The treatment notes cited by Plaintiff, however, do not reveal disabling symptoms; they reveal normal blood pressure without evidence of orthostatic hypotension, stable depression, medication adjustments, spinal and lower back tenderness, and increased orthostatic intolerance due to weather changes.  Notably, the ALJ accounted for the latter in Plaintiff's RFC by limiting her contact with extreme hot and cold temperatures.

The reasons cited by the ALJ for discounting Dr. Stadler's opinions are supported by the evidence of record and are sufficiently specific to make clear to any subsequent reviewers the "little weight" accorded to Dr. Stadler's opinions.  Moreover, it is evident that the ALJ considered the regulatory factors in her analysis of Dr. Stadler's treatment notes and opinions, particularly, the length, nature, and extent of Plaintiff and Dr. Stadler's treatment relationship; Dr. Stadler's specialization; and the consistency of Dr. Stadler's opinion with the record.  The

ALJ's assessment of Dr. Stadler's opinion is supported by substantial evidence and should not be disturbed.

### b.    Dr. Jill M. Fox, M.D.

With regard to Plaintiff's mental health treatment, the ALJ discussed and considered the treatment notes of Plaintiff's treating psychiatrist, Dr. Jill M. Fox, M.D., dated August 2011 through 2013.  (TR 19-20.)  The ALJ then summarized and assessed Dr. Fox's January 31, 2012 opinion:

> As for the opinion evidence, Dr. Jill Fox opined on January 31, 2012, that the claimant is markedly limited in the ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors.  She also indicated that the claimant is markedly limited in her ability to understand, remember, and carry out detailed instructions and to maintain attention and concentration for extended periods.  Dr. Fox noted that the claimant was very dependent on her parents and worried what others think of her.  She listed clinical finds of poor memory, appetite disturbance, sleep disturbance, personality change, mood disturbance, emotional lability, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation, social withdrawal, intrusive recollections of a traumatic experience, somatization unexplained by organic disturbance, and pathological dependence.  Lastly, Dr. Fox opined that the claimant would be capable of low stress work on good days (Exhibit B9F).  Little weight is given to the opinion of Dr. Fox.  The opinion is inconsistent with the claimant's activities of attending college courses and participating in theater productions.  Additionally, Dr. Fox has continued the claimant on the same medications of Effexor and Xanax for a longitudinal period. This suggests that her depression is stable, as also indicated by Ms. Karabin.

(TR 21.)

Plaintiff asserts that the ALJ erred by finding Dr. Fox's opinion to be inconsistent with Plaintiff's ability to attend college courses and participate in theater, because those activities are "hardly indicative of the ability to perform full-time work on a sustained basis."  (Docket no. 12 at 21 (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) (Minimal daily functions such as driving, doing laundry and other housework, reading, and caring for pets are

not comparable to typical work activities.)).)   The authority Plaintiff cites, however, does not address the ability to go to school.   As the ALJ reasoned, "attending school can be challenging both physically and mentally requiring many of the same attributes required for full time work including an ability to keep a schedule, commute on a daily basis, perform to specifications, and learn and apply new knowledge."   (TR 21.)   The ALJ's analysis on this issue is not erroneous and does not warrant remand.

Plaintiff also argues that the ALJ mischaracterized the record by finding that Plaintiff's psychotropic medications did not change during the relevant period.   (Docket no. 12 at 22.) Plaintiff expounds that she tried several different medications and that the doses of her medications were adjusted on multiple occasions during the period at issue.   (*Id*.)   But Plaintiff mischaracterizes the ALJ's findings.   The ALJ did not make findings with regard to all of Plaintiff's medications; the ALJ made findings with regard to only two of her medications: Effexor and Xanax.   (TR 21.)   Specifically, the ALJ found that Dr. Fox continued Plaintiff on Effexor and Xanax for a longitudinal period, which suggested that Plaintiff's depression was stable.   (TR 21.)   The ALJ's lack of discussion with regard to Plaintiff's other medications does not constitute error, as it is axiomatic that an ALJ need not discuss every piece of evidence in the record.   *Kornecky*, 167 F. App'x at 508 (citation omitted).

Here, the ALJ provided good reasons for discounting Dr. Fox's opinion and, in doing so, considered the regulatory factors, such as the length, nature, and extent of Plaintiff's treatment relationship with Dr. Fox and the consistency of Dr. Fox's opinion with the record.   The ALJ's assessment of Dr. Fox's opinion is supported by substantial evidence and should not be disturbed.

c.      Beverly Karabin, NP, and Doreen Pant, MSW, LISW

Plaintiff also challenges the ALJ's assessment of little weight to the opinions rendered by Beverly Karabin and Doreen Pant.  At all relevant times, Ms. Karabin was a nurse practitioner at the University of Toledo Medical Center.  (*See* TR 300-01.)   Therefore, her opinions and assessments are not opinions from an acceptable medical source as defined in the regulations.  20 C.F.R. §§ 404.1513, 416.913.  Because a nurse is not an acceptable medical source, the ALJ can consider her opinion as evidence from an "other" medical source, but she is not required to accord the opinion any special weight or consideration. *Taylor v. Comm'r of Soc. Sec.*, No. 1:11-cv-46, 2012 WL 1029299, at *6 (W.D. Mich. Mar. 26, 2012) (citing 20 C.F.R. § 404.1513(d)(1)).   The ALJ is under no obligation to explain the weight given to a nurse practitioner's opinion or give good reasons for why the opinion was discounted.  *Southward v. Comm'r of Soc. Sec.*, No. 11-CV-14208, 2012 WL 3887439, at *10 (E.D. Mich. May 17, 2012). These premises apply equally to the opinion of Plaintiff's social worker, Ms. Pant, as a social worker is also not an acceptable medical source under the regulations.  Accordingly, Plaintiff's arguments regarding the ALJ's assessments of Ms. Karabin and Ms. Pant's opinions fail.

d.      Dr. Gayle Oliver-Brannon, Ph.D., LP

Next, Plaintiff argues that "[t]he ALJ also completely ignored the opinions from the examining psychologist Dr. Oliver-Brannon who opined that [Plaintiff] is psychiatrically disabled."  (Docket no. 12 at 23 (citing TR 380).)  Plaintiff claims that Dr. Oliver-Brannon's opinion is "additional new and material evidence that precluded the ALJ from relying on the previous decision."  (*Id*. at 23-24.)

Dr. Oliver-Brannon, a licensed psychologist, conducted a psychological evaluation of Plaintiff on June 14, 2012, with regard to Plaintiff's alleged disability.  (TR 377-80.)  The parties

14

do not dispute that Dr. Oliver-Brannon was not a treating physician, as she only examined Plaintiff once on a consultative basis. The ALJ is not bound by a non-treating physician's opinion. *McKivens v. Comm'r*, No. 11-cv-14268, 2012 WL 3263847, at *11 (E.D. Mich. Jul. 9, 2012) (citation omitted). However, "[w]hen no treating physician opinion has been granted controlling weight ... the medical opinion of a consultative examiner is to be weighed considering all of the factors identified in 20 C.F.R. § 404.1527(c)(1) through (6)." *Id.* (citing 20 C.F.R. § 404.1527(e)(2)(iii)). Nevertheless, there is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c). *Norris v. Comm'r*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)).

Upon examining Plaintiff, Dr. Oliver-Brannon diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, ADHD, PTSD, panic disorder without agoraphobia, and borderline personality disorder. (TR 379.) Dr. Oliver-Brannon then issued the following medical source statement:

> The claimant has a history of mood, psychiatric, and physical/medical issues that has prevented her from participating in successful long term employment. She is non-trusting and tends to keep to herself. Brief encounters with others are best. She has been self isolating due to trust issues, mood issues, and poor coping skills. She is able to understand and engage in simple to some moderate daily living tasks. However she gives up easily on projects due to a low frustration tolerance. She seems motivated to improve her condition and recognizes the need for mental health treatment to function as normal as possible.

(TR 380.)

Contrary to Plaintiff's assertion, the ALJ did not "completely ignore" Dr. Oliver-Brannon's opinion that Plaintiff is "psychiatrically disabled" because Dr. Oliver-Brannon made no such finding. In fact, the ALJ, in her decision, acknowledged Dr. Oliver-Brannon's diagnoses

and her statements that Plaintiff is non-trusting, keeps to herself, and is able to understand and engage in simple to moderate tasks but gives up easily due to frustration.  (TR 20.)  The ALJ did not assign weight to Dr. Oliver-Brannon's opinions or consider the regulatory factors in her assessment of those opinions.  Nevertheless, to the extent that the ALJ's failure to do so is erroneous, any such error is harmless because the ALJ incorporated into the RFC the only opinion given by Dr. Oliver-Brannon regarding Plaintiff's current functional limitations affecting her ability to work – that Plaintiff is able to understand and engage in simple to some moderate tasks.  Notably, the remainder of Dr. Oliver-Brannon's medical source statement consists of observations regarding Plaintiff past limitations, general characteristics, and future intentions. Plaintiff's argument fails in this regard.

e.      State-Agency Consultants

In her decision, the ALJ assigned great weight to the opinions of the state-agency medical and psychological consultants, who opined that the prior ALJ's RFC should be adopted.  (TR 23.)  Plaintiff asserts that the ALJ erred by crediting the opinions of the state-agency non-examining sources over the opinions of her treating providers and the consultative examiner, particularly because the state-agency consultants did not review the complete record, including the new and material evidence from Plaintiff's treating sources.  (Docket no. 12 at 17-18.)  While a non-examiner's review of a complete case record is an *example* of an appropriate circumstance in which to afford a non-examiner's opinion more weight than an examiner's opinion, SSR 96-6p, 1996 WL 374180, at *3, there is no requirement that a non-examiner's opinion be based on a review of the entire record in order to support an ALJ's decision denying benefits.  Indeed, the Sixth Circuit has held that "[a]n administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported

16

by the objective medical records." *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014) (citing *Gayheart* at 379–80). As discussed above, the ALJ's decision to discount the opinions of Plaintiff's treating sources on the basis that they are inconsistent with the record evidence, among other things, is supported by substantial evidence. Accordingly, the ALJ did not err in adopting the opinions of the state-agency consultants in this matter.

The discussion above provides that the ALJ properly assessed the medical evidence in this matter. More importantly, it provides that the ALJ properly discounted the purportedly new and material evidence submitted by Drs. Stadler and Oliver-Brannon and nurse practitioner Karabin that Plaintiff offers to support her position. Plaintiff has not sufficiently provided proof that her condition has worsened since the date of the prior decision to such a degree that she is no longer capable of engaging in substantial gainful activity. Accordingly, the ALJ's determination that "the record does not suggest a worsening in [Plaintiff's] condition since the prior determination" such that a departure from the prior ALJ's findings and determinations would be warranted is supported by substantial evidence. The ALJ did not err in her application of the res judicata doctrine under the Acquiescence Rulings and *Drummond*; Plaintiff's Motion should be denied with regard to this issue.

### 2. The ALJ's Assessment of Plaintiff's Credibility

Next, Plaintiff asserts that "[t]he ALJ's brief credibility determination is not supported by substantial evidence." (Docket no. 12 at 24-26.) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported

by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors). As part of her argument, Plaintiff asserts that the ALJ failed to consider these factors. (Docket no. 13 at 17-18.)

Here, the ALJ considered and discussed Plaintiff's hearing testimony and other subjective complaints in conjunction with the record evidence, and she found that Plaintiff's allegations

2:14-cv-14700-DML-MKM   Doc # 19   Filed 01/27/16   Pg 19 of 20   Pg ID 903

were not entirely credible. (TR 18-23.) In reaching this determination, the ALJ stated, "the claimant alleges worsening in her depression since the previous decision, but worsening is not reflected in her treatment notes or her activities of daily living." (TR 21.) The ALJ then noted that Plaintiff's daily activities had increased since the prior determination; particularly, Plaintiff was taking college courses and participating in a theater program, which the ALJ found required many of the same attributes as full-time work. The ALJ also pointed out that Plaintiff's mood swings, depression, and migraine headaches were stable with medication, and that Plaintiff had been taking the same medication, namely Effexor and Xanax, for a longitudinal period of time. Additionally, the ALJ acknowledged Plaintiff's reports that her symptoms increased with stress and changes in the weather, and the ALJ accounted for such situations in the RFC by limiting Plaintiff to low-stress work and prohibiting her contact with extreme temperatures.

The immediate discussion demonstrates that the ALJ provided specific reasons for discounting Plaintiff's credibility in her decision, and, in doing so, applied many of the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that she gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed; Plaintiff's Motion should be denied in this regard.

## VI.    CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 11) and GRANT Defendant's Motion for Summary Judgment (docket no. 18).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: January 27, 2016          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: January 27, 2016          s/ Lisa C. Bartlett
                                 Case Manager